S96A1912. JAMES F. NELSON, JR. FAMILY LIMITED PARTNERSHIP et al. v. MILLER.
(479 SE2d 737)

CARLEY, Justice.

At issue in this case is a long-standing dispute over ownership of the mineral rights in a 269.5-acre tract located in Wilkinson County. The James F. Nelson, Jr. Family Limited Partnership (Nelson) is the present owner of record title to the tract, but, since 1986, Sidney Miller has been the owner of record title to the mineral rights therein. In 1975, Nelson's predecessor in title brought a declaratory judgment action pursuant to the newly enacted OCGA § 44-5-168, seeking to establish title to the mineral rights in the tract. Under that statute, Miller's predecessors in title would lose their mineral rights unless, in the preceding seven-year period, they: 1) worked or attempted to work those rights; or, 2) paid taxes on those rights. Although the evidence showed both non-user and non-payment, we held that the action was "premature" because it was commenced less than seven years from the date OCGA § 44-5-168 became effective. *Nelson v. Bloodworth*, 238 Ga. 264, 267 (2) (232 SE2d 547) (1977).

Here, Nelson likewise brought a declaratory judgment action

---

the hearing on the pre-trial dismissal motion transcribed.

and sought to establish its ownership of the mineral rights pursuant to OCGA § 44-5-168. After hearing evidence at a bench trial, the trial court found that Miller neither worked nor attempted to work the mineral rights in the relevant seven-year time period. With regard to Miller's payment of taxes, the undisputed evidence showed he had paid taxes on a mineral rights interest in Wilkinson County in the preceding seven years, but the county tax records indicated that those taxes were assessed on Miller's homeplace and not on the 269.5-acre tract in issue. However, Miller showed that, during the preceding seven-year period, he owned his homeplace in fee simple and held record title to no mineral rights in Wilkinson County other than in the 269.5-acre tract. Based upon this evidence, the trial court found that,

> since the taxes have been duly paid on a [mineral] interest and since apparently the error was not that of [Miller] but was a bookkeeping or tax map number assigning error in the tax assessor's office . . . equity demands that this tax payment be credited toward the appropriate parcel rather than the parcel to which the tax assessor's office erroneously attached it.

Accordingly, the trial court entered an order denying declaratory relief and from that order Nelson brings this appeal.

Nelson enumerates only the general grounds. In a bench trial, the trial court sits as the trier of fact and its findings cannot be set aside unless they are clearly erroneous. OCGA § 9-11-52 (a). Accordingly, the trial court's denial of declaratory relief must be affirmed if there is any evidence to support the trial court's finding that the tax assessor's office mistakenly attributed Miller's tax payments to a non-existent mineral rights interest in his homeplace, rather than properly attributing those tax payments to Miller's recorded mineral rights interest in the 269.5-acre tract. See generally *Dudley v. Snead*, 250 Ga. 804 (1) (301 SE2d 480) (1983).

The owner of an interest in real property has a duty to return his interest for taxation. OCGA §§ 48-5-10; 48-5-15.

> To accomplish the proper collection of taxes, the General Assembly has established a taxing scheme calling for all property to be returned with specificity. [Cits.] The General Assembly has also provided that local tax officials must only accept the return of property as provided by law. [Cit.]

*Georgia Marble Co. v. Whitlock*, 260 Ga. 350, 354 (1) (d) (392 SE2d 881) (1990). A review of the record shows no evidence that Miller ever returned his interest in the mineral rights for taxation. Indeed,

the undisputed evidence shows that he did not. When asked whether he returned his interest for taxation after acquiring it in 1986, Miller testified:

No, I did not and again I think that is a little bit of a foolish question, wasting my time and yours. The Tax Assessor, it's my understanding, picks up taxes from deeds in the court-house whenever they are recorded, and I depend upon them to do their job and I try to do mine and I don't think mine consists of running each time I transfer property of any kind to go to the Tax Assessor and say, look, I now own this or I don't own this and so on.

Contrary to Miller's "understanding," the law does impose upon him a requirement to return his property for taxation and further provides that, only when his property has been returned, will his property thereafter be deemed returned in succeeding years. OCGA §§ 48-5-10; 48-5-15; 48-5-20 (a).

The trial court was influenced by the fact that, during the relevant seven-year period, Miller had been paying a tax which the records indicated was for the mineral rights in his homeplace. It is true that no separate tax on the mineral rights in Miller's homeplace would be owed for the period Miller owned that tract in fee simple. Under the undisputed evidence, however, at some time preceding the relevant seven-year period, Miller did own solely the mineral rights in his homeplace and only subsequently did he acquire fee simple title to the tract. Accordingly, during that period when Miller owned only the mineral rights in his homeplace, a tax properly was assessed on only that interest. If, as the records indicate, Miller continued to pay a separate tax on that interest even after he acquired fee simple title to his homeplace, then he was paying excessive taxation on that tract. However, Miller's payment of excessive taxation on his home-place would not relieve him of his statutory obligation to return for taxation the interest he acquired in 1986 in the mineral rights on the 269.5-acre tract or excuse his acknowledged failure to have done so. *Georgia Marble Co. v. Whitlock*, supra at 352 (1).

Miller urges that he should retain his title to the mineral rights on the 269.5-acre tract, since Nelson was aware that he had not returned his interest in those rights and that he had continued to pay taxes on the mineral rights in his homeplace. However, nothing in OCGA § 44-5-168 precludes the holder of record title from acquiring title to mineral rights if he is aware of the mineral rights owner's failure to use the rights or to pay taxes during a seven-year period. It is the mineral rights owner's own failure either to use his rights or to pay taxes, not the record titleholder's lack of knowledge of that fail-

ure, which is determinative of the loss of title to the mineral rights interest.

There is no evidence to support the trial court's finding of a "mistake" on the part of the tax assessor's office insofar as Miller's payment of taxes on the 269.5-acre tract is concerned. Since Miller did not make a tax return as required by law, he cannot take advantage of the tax assessor's error in continuing to assess taxes on the mineral rights in his homeplace and have those payments applied against the mineral rights interest in the 269.5-acre tract which he never returned and which was never assessed by the tax assessor's office. If Miller has paid erroneously assessed taxes on his homeplace, he can apply for a refund pursuant to OCGA § 48-5-380. However, the undisputed evidence demands a finding that Miller lost his title to the mineral rights in the 269.5-acre tract by failing to pay taxes thereon during the relevant seven-year period. See *Fisch v. Randall Mill Corp.*, 262 Ga. 861, 863 (3) (426 SE2d 883) (1993). It follows that the trial court's order must be reversed with direction that judgment be entered for Nelson.

*Judgment reversed with direction. All the Justices concur.*

DECIDED JANUARY 21, 1997.

*Nelson, Gillis & Smith, Donald W. Gillis, James S. Smith, Jr.,* for appellants.
*Adams & Jordan, D. James Jordan,* for appellee.